CIVIL ACTION No. 17-CV-01473
MAGISTRATE JUDGE KATHLEEN KAY

| | | |
|---|---|---|
| SONYA CARR | * | UNITED STATES DISTRICT COURT |
| VERSUS | * | WESTERN DISTRICT OF LOUISIANA |
| WAL-MART | * | LAKE CHARLES DIVISION |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

_____
JUDI F. ABRUSLEY (#24272)
407 East 6th Avenue
Post Office Drawer 1114
Oakdale, Louisiana 71463
Telephone: (318) 335-3520
Fax: (318) 335-9780

# TABLE OF CONTENTS

1. **INTRODUCTION**……………………………………………… 1

2. **STATEMENTS OF FACTS**……………………………………. 1

3. **STANDARD OF REVIEW**……………………………………. 3

4. **ARGUMENT**…………………………………………………. 4

    a. PRIMA FACIE SHOWING………………………………… 5

    b. MOTIVE FOR TERMINATION…………………………… 8

        i. McDonell Douglas…………………………………… 9

        ii. Mixed-Motives……………………………………........ 11

5. **CONCLUSION**……………………………………………...… 12

## PLAINTIFF'S EXHIBITS IN OPPOSITION

A. Plaintiff, Sonya Carr, Deposition.

B. Job Offers

C. 2016 Performance Evaluation

D. Louisiana Workforce Commission Qualifying Separation Determination

E. Certification of Health Care Provider & Return to Work Certificate *in globo*

F. Exit Interview

G. Mediate Now correspondence *in globo*

## INTRODUCTION

Sonya Carr, Plaintiff, was terminated in retaliation for taking leave under the Family and Medical Leave Act ("FMLA")[1]. Ms. Carr's original *pro se* Petition was dismissed without prejudice. She then hired counsel to file an Amended Petition, which supersedes the original *pro se* Petition. Therefore, Ms. Carr is not bound by any facts or allegations made in the original *pro-se* Petition.[2] More importantly, any presumptions that movant urges the court to draw from the original *pro-se* Petition go to credibility and weight of evidence, which is a jury function and not those of a judge in ruling on a Motion for Summary Judgment.[3]

## STATEMENT OF FACTS

Sonya Carr was employed at Wal-Mart in Oakdale, Louisiana for 10 years and 8 months, from February 2006 until October 2016.[4] She received three different offers of promotion while employed and worked her way up from cashier to department manager.[5] Although she did receive some "coachings" throughout the years, she maintained positive yearly performance evaluations. In fact, approximately five months before she was terminated, her 2016 yearly performance evaluation noted her overall performance as "above average".[6]

Ms. Carr suffers from high blood pressure problems, which she believes were exasperated with personal tensions at work.[7] She met with her primary care physician, Tammy Newman, on September 2, 2017. Thereafter, the physician submitted Wal-Mart's required forms and medical certification for FMLA leave on September 7, 2016 and a return to work certification for September 26, 2016. This was the second medical leave of absence Ms. Carr

---

[1] 29 U.S.C. 2601, et seq.
[2] *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).
[3] *Anderson v. Liberty Lobby, Inc. and Carto*, 477 U.S. 242, 255; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986).
[4] Exhibit A, pg. 19, 24.
[5] Exhibit B *in globo*; Exhibit A pgs. 20-22.
[6] Exhibit C; Exhibit A pgs. 65-66.
[7] Exhibit E; Exhibit A pgs. 132.

1

took during her employment at Wal-Mart due to hypertension (the first was in the beginning of 2015).[8] When Ms. Carr returned to work, not only had the personal issues with management not resolved, she found her department in worse shape than it was before she left.[9] Due to Wal-Mart's scheduling, Ms. Carr worked a total of 2 days to get her department back to standard.[10] On October 4, 2016, the third day she was scheduled to work, she was terminated. The reason for termination given by Wal-Mart at that time, according to the Exit Interview, is "inability to perform job."[11]

The Exit Interview also implies, under manager comments, that termination partly dealt with company policy stating that "there is already 3 coachings in the system and this is the final step".[12] Wal-Mart's Coaching for Improvement Policy states that an employee can be terminated if there are three written coachings within a rolling 12-month period, not including time on leave of absence. Of the coachings received by Ms. Carr, only the ones on file since September 26, 2015 are relevant according to the active coaching period in this policy. It is alleged that there are two coachings on file since that time, and Ms. Carr acknowledges receiving the coaching dated July 4, 2015. However, the coaching dated September 29, 2015 is neither signed by Ms. Carr nor any Wal-Mart supervisor, and Ms. Carr denies the allegations made within that coaching.[13]

Because Ms. Carr felt she was wrongfully terminated and had been successful in previous meetings with upper level management, she appealed her termination. While meeting with upper management, Ms. Carr was told she was in fact not fired due to job performance as stated in her

---

[8] Exhibit A pgs. 43, 48.
[9] Exhibit A pgs. 140, 146.
[10] Exhibit A pgs. 137, 146-147.
[11] Exhibit F, Exit Interview.
[12] *Id.*
[13] Exhibit A pgs. 85-86.

Exit Interview, but because of personal conflicts.[14] The Louisiana Workforce Commission granted Ms. Carr's request for Louisiana unemployment benefits, and determined there was "no misconduct connected with the employment" which would disqualify such benefits.[15] Louisiana defines misconduct as "mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others".[16] After Ms. Carr hired Mediate Now in attempt to mediate this wrongful termination, Wal-Mart responded very generally stating she was fired in accordance with all federal and state laws.[17] Wal-Mart now claims Ms. Carr was terminated due to insubordination and poor job performance.

### STANDARD OF REVIEW

Summary judgments in employment discrimination cases should be "seldom used" because "they often on inferences rather than on direct evidence and because intent is generally a central issue therein".[18] The court shall only grant summary judgment if the movant shows there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law.[19] In making this determination, a court must view the evidence and draw reasonable inferences in the light most favorable to the opposing party.[20] It is not a question of whether the evidence unmistakably favors movant, but whether a fair-minded jury could return a verdict for Ms. Carr.[21]

---

[14] Exhibit A pgs. 161-163.
[15] Exhibit D.
[16] La. R.S. 23:1601(2)(a).
[17] Exhibit G.
[18] *Podkovich v. Glazer's Distributors of Iowa, Inc.*, 446 F.Supp.2d 982, 995 (N.D. Iowa 2006).
[19] Federal Rule 56(A).
[20] *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000).
[21] *Anderson* at 252.

## ARGUMENT

Jurisprudence has developed analytical frameworks for evaluating FMLA retaliation claims such as this one. Although movant argues that the *McDonnell Douglas*[22] framework is the appropriate method, there is a legal question of whether a mixed-motive analysis is more appropriate. As discussed below, most U.S. Circuit Courts have declined to make a decision on this issue since the *Gross*[23] and *Nassar*[24] decisions but can agree that these decisions are not definitive or clear as to preclude such a mixed-motive analysis in FMLA retaliation claims.

Both methods require Ms. Carr to prove a *prima facie* case of retaliation before shifting the burden of proof to movant to proffer a "legitimate, nonretaliatory reason" for the termination.[25] Once Movant meets this burden, the analytical frameworks differ as to whether Ms. Carr must prove that Wal-Mart's proffered reason for termination was pretext, or, although true, is but one of the motivations for her termination, another of which was retaliation for FMLA leave.

Wal-Mart claims it terminated Ms. Carr due to her poor job performance and insubordination. However, in the 10 years and 8 months Ms. Carr was employed at Wal-Mart, she never received a negative performance evaluation[26] and was offered a promotion three times[27]. Circumstances surrounding her termination, including various reasons given, the practicality of the work conditions upon her return, and the questionable coachings, raise genuine issues of material fact to be determined at trial. The determination of Wal-Mart's true intent when terminating Ms. Carr and the reasonableness of its actions are likely to come down to

---

[22] *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 807; 93 S.Ct.1817, 1826-1827; 36 L.Ed.2d 668 (U.S. 5/14/1973).
[23] *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343 (2009).
[24] *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed. 503 (2013).
[25] *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir.2001).
[26] Exhibit A pgs. 65-66; Exhibit C.
[27] Exhibit B; Exhibit A pgs. 100-101.

4

credibility determinations that cannot be determined in a Motion for Summary Judgment. Moreover, there is a legal question of whether Ms. Carr must prove retaliation was the only reason for her termination or whether it was just a motivating factor. For both reasons, movant cannot prove that it is entitled to judgment as a matter of law or that there is no genuine issue of material fact.

PRIMA FACIE SHOWING

In order to show a *prima facie* case of retaliatory termination under the FMLA, Ms. Carr must show that (1) she was engaged in a protected activity; (2) she suffered an adverse employment action, and (3) there is a causal link between the adverse employment action and the termination.[28] Movant makes no argument to dispute Ms. Carr was protected under the FMLA (a protected activity) nor that she suffered adverse employment action (termination), other than a short footnote. Therefore, Ms. Carr need not respond with specific facts establishing a genuine issue with respect to the first two requirements of a *prima facie* case.[29] However, in an abundance of caution, Ms. Carr was entitled to protection under the FMLA as it was a serious health condition requiring continuing treatment of a chronic condition.[30] Moreover, all forms submitted for requested FMLA leave were approved by Wal-Mart.[31] It is obvious termination qualifies as an adverse employment action.

Instead, movant argues that Ms. Carr is unable to prove a causal link, or the third prong of a *prima facie* case. This prong is to be interpreted broadly[32] and Ms. Carr need only make a "very minimal showing" of whether "there is enough evidence to require an employer to

---

[28] *Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 330 (5th Cir. 2005).
[29] *Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 146 (3rd Cir. 2004).
[30] Exhibit E, Certification of Health Care Provider *in globo*.
[31] 29 C.F.R. § 825.113; 29 C.F.R. § 825.115; *See also* Chang v. Institute for Public-Private Partnerships, Inc., 846 A.2d 318, (D.C. Cir. 2004) describing hypertension as a "serious medical condition" entitling FMLA protection.
[32] *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1273 (11th Cir. 2017).

respond"[33]. Moreover, Ms. Carr does not have to show that taking FMLA leave was the only cause of her termination, only that the leave and her termination are "not completed unrelated".[34] While movant argues that Ms. Carr cannot meet this burden because she was allegedly terminated for other reasons, "an ultimate showing of liability" is not required to prove a causal connection.[35] Any allegations made by movant regarding Ms. Carr's job performance or personal differences with managers relate to the reasonableness and motive of Wal-Mart's proffered reason to terminate her as discussed below, and does not negate a causal connection as required in proving a *prima facie* case. In truth, movant's reliance upon these allegations prove a genuine issue of credibility that precludes Summary Judgment.

When making the determination of a causal connection, the court "shall consider the temporary proximity between the FMLA leave and the termination".[36] If the timing is very close, "temporal proximity alone is sufficient" to establish causation in a *prima facie* case.[37] While courts vary on the length of time required to constitute "very close", time periods of up to a month between returning from FMLA leave and termination have been held as sufficient to meet the causation burden.[38] In this case, Ms. Carr was terminated on October 4, 2016 – just 8 days after returning from leave on September 26, 2016.[39] This is clearly a close enough time period standing alone to establish causation. As described in *Podkovich*[40], a reasonable juror could conclude from short a time period that Wal-Mart was simply waiting for her return to work to terminate her in retaliation for taking FMLA leave. According to jurisprudence, Ms. Carr is able

---

[33] *Grubb v. Sw. Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008).
[34] *Garcia v. Penske Logistics, LLC,* 165 F.Supp.3d 542, 558-559 (S.D. Tex. 2014).
[35] *Id.*
[36] *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.,* 446 F.3d 574, 583 (5th Cir.2006); *Allain v. Board of Supervisors of University of Louisiana System,* 81 F.Supp.3d 502, 511 (W.D. Louisiana 2015).
[37] *Smith v. Allen Health System, Inc.,* 302 F.3d 827, 833 (11th Cir. 2002).
[38] *Jones* at 1272 – 1273.
[39] Exhibit A pgs. 24, 137; 146-147.
[40] *Podkovich* at 1009.

to present a "very minimal showing" of causation sufficient to preclude summary judgment based on this time period.

Additionally, Ms. Carr took FMLA leave due to hypertension which she believes was caused by stress at work[41]. When Ms. Carr returned from leave, her work area was worse than it was before she left. After working for only two days since returning from leave, Brent Dietz, informed her she had one week to complete three-weeks' worth of work knowing Ms. Carr was concerned about her work load.[42] Moreover, Wal-Mart knew hypertension was the reason for her FMLA leave, especially since this was the second time during her employment she was required to take leave due to this medical condition[43]. It is not unreasonable to believe that Wal-Mart intentionally created an impossible and unreasonable situation to create an excuse for an additional coaching in retaliation for taking FMLA leave. A reasonable juror could conclude that Wal-Mart retaliated against Ms. Carr's use of FMLA leave by unreasonably intensifying the circumstances which caused her to take the leave in the first place and using the coaching policy in an effort to conceal the true motive.

In sum, the temporal proximity between returning from FMLA leave and Ms. Carr's termination is sufficient standing alone to prove the causation prong of a *prima facie* FMLA retaliation case. Even if that was not enough, there is a genuine issue of fact regarding the reasonableness and intentions of Wal-Mart of the requirements placed on Ms. Carr upon returning from leave and whether a reasonable juror could induce causation from the surrounding circumstances to preclude summary judgment.

---

[41] Exhibit A pgs. 132-133.
[42] Exhibit A pgs. 142, 146.
[43] Exhibit A pgs. 42-50.

MOTIVE FOR TERMINATION

Movant alleges Ms. Carr was terminated solely due a "long history of poor job performance and insubordination", a legitimate and nondiscriminatory reason. Therefore, the burden shifts to Ms. Carr to prove the last prong. However, there remains a legal question as to what that burden of proof is. The *McDonnell Douglas* analysis, as described by movant, is appropriate when there is a single alleged reason for retaliation. When it is alleged that retaliation is just a motivating factor in the termination, a mixed-motive theory is more appropriate. These two methods are nearly identical, however the burden of proof in rebutting the employer's proffered reason for termination differs. Ms. Carr must prove movant's reason for termination is pretext for retaliation or that "but-for" her taking FMLA leave, she would not have been terminated under *McDonnell Douglas*.[44] In the mixed-motive analysis, Ms. Carr "must merely show that the nonretaliatory reason is but one of the reasons for its conduct another of which was retaliation."[45]

Neither the Supreme Court, nor the Fifth Circuit Court, has decided whether the heightened "but for" causation standard required for Title VII retaliation claims[46] applies with equal force to FMLA retaliation claims.[47] However, the W.D. of Louisiana United States District Court held in 2015, subsequent to the *Nassar and Gross* decisions, that the traditional *McDonnell-Douglas* framework does not always apply in FMLA retaliatory discharge cases, and a mixed-motive framework is applicable when the employee argues that discrimination was a motivating factor in termination.[48] Because this case could hinge on the appropriate burden of

---

[44] *Robinson* at 519.
[45] *Allain* at 509.
[46] *Nassar* dictates the "but-for" causation standard in Title VII retaliation claims.
[47] *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 706 (5th Cir. 2016)
[48] *Allain* at 511.

8

proof and there is no clear jurisprudential ruling or law, summary judgment should be denied. Nonetheless, in an abundance of caution, Ms. Carr shows that there are also genuine issues of material fact regarding the reason for her termination under both methods.

McDonnell-Douglas

Movant's proffered reason is pretext, or merely a false excuse, for Ms. Carr's discriminatory termination. Not only is movant's reason false, Wal-Mart did not follow its own procedure, and expressed differing reasons for her termination.

Wal-Mart and its employees have given various reasons for terminating Ms. Carr. In the Exit Interview on October 4, 2016, it states "there is already 3 coachings in the system and this is the final step".[49] When Ms. Carr alleged wrongful termination and hired Mediate Now, Wal-Mart declined to participate and very generally alleged Ms. Carr "was terminated in accordance with applicable state and federal law".[50] When Ms. Carr appealed her termination, Clint Leblanc, the District Manager, told her that she was not in fact terminated for inability to perform her job but because she doesn't know "when to shut her mouth".[51] Movant now alleges she was terminated due to insubordination and poor job performance. These varying reasons provide a general issue of material fact of Wal-Mart's true reason for termination.

In addition, Ms. Carr can provide direct evidence that establishes pretext. Ms. Carr's job performance was specifically evaluated by Wal-Mart in numerous performance evaluations. According to Ms. Carr, she did not receive a poor evaluation in over 10 years of her employment.[52] In fact, her 2016 performance evaluation rated her overall performance as "above

---

[49] Exhibit F.
[50] Exhibit G *in globo*.
[51] Exhibit A pgs. 161-163
[52] Exhibit A pgs. 65-66.

9

average".[53] This evaluation was signed less than five months prior to her termination and stated that Wal-Mart was "very proud of her".

Throughout Ms. Carr's employment, Wal-Mart offered her three promotions – in 2007, 2010, and 2016.[54] Although she declined to accept the most recent offer in April or May 2016 due to the hours and lack of pay increase, the fact that it was offered to her by Brent Dietz, the same person who terminated her due to alleged poor job performance, within six months of the same year she was terminated[55] proves that Wal-Mart believed Ms. Carr to be a valuable employee with strong work ethic and not that of insubordinate or poor job performance.

The Louisiana Workforce Commission also approved Ms. Carr's request for unemployment benefits after her termination.[56] Under Louisiana law, an employee will be disqualified if there is any misconduct connected with the employment. Misconduct is defined in pertinent part as "mismanagement of a position of employment by action or inaction…wrongdoing…or violation of a policy or rule adopted to insure orderly work".[57] In short, if Ms. Carr was terminated for poor job performance, insubordination, not knowing when to shut her mouth, or any of the other reasons given by Wal-Mart, the Louisiana Workforce Commission would have disqualified her unemployment benefit request. However, in the Qualifying Separation Determination, the Commission specifically found "no misconduct connected with the employment".[58]

Movant relies upon Wal-Mart's Coaching for Improvement Policy and uses Ms. Carr's alleged coachings as evidence. Although movant has produced two alleged coachings during the

---

[53] Exhibit C.
[54] Exhibit B; Exhibit A pgs. 100-101
[55] Exhibit A pgs. 100-102
[56] Exhibit D.
[57] La. R.S. 23:1601(2)(a).
[58] *Id.*

10

active coaching period, one on September 29, 2015 and one on July 4, 2016, Ms. Carr specifically denies receiving the September 29, 2015 coaching.[59] Not only does Ms. Carr deny the allegations made within the coaching, it blatantly lacks the signatures of Ms. Carr or any supervisor acknowledging the coaching when compared to the conceded July 4, 2016 coaching.[60] However, even assuming this as a valid coaching, it is apparent there are not three written coachings on file at the time Ms. Carr was terminated.

Mixed-Motives

To proceed under a mixed-motive analysis, Ms. Carr is not required to concede that retaliation was not the sole reason for discharge nor that movant's proffered reason is legitimate.[61] According to this method, Ms. Carr must only prove that discrimination or retaliation was a motivating factor in the employment decision.[62] In a summary judgment setting, the burden is not to persuade the court that defendant's explanation is incorrect but rather, to raise a genuine issue of material fact by presenting evidence that rebuts that defendant's nondiscriminatory reason and creates an inference that impermissible discrimination was a determinative factor.[63] Although movant places great emphasis on alleged personal differences between Ms. Carr and various managers, it is not dispositive of her FMLA retaliation claim even if it is true and even if it was one of the motivating factors in Ms. Carr's termination.

In addition to all the reasons stated above, it is reasonable to infer that Ms. Carr's FMLA leave was a motivating factor in her termination, especially since Wal-Mart purposefully exasperated Ms. Carr's medical condition and concerns of work load a mere week after her

---

[59] Exhibit A pgs. 85-86.
[60] Movant's Exhibit C.
[61] *Allain* at 513, quoting *Smith* 602 F.3d 320 (5th Cir. 2010).
[62] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir.2004).
[63] *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1180–81 (5th Cir. 1996).

11

return[64]. Wal-Mart knew that Ms. Carr's high blood pressure was the reason for her taking FMLA leave, especially since it was not the first time she had taken leave for this medical condition.[65] Wal-Mart also knew of Ms. Carr's concerns regarding her work load, which she claims caused her medical condition, because she had previously expressed those to management.[66] When Ms. Carr returned from her three week FMLA leave, her department was in worse shape than when she left.[67] Despite returning from leave one week prior to her termination, Ms. Carr was only scheduled to work two days when Wal-Mart terminated her.[68] As explained by Ms. Carr at the time, it is irrational to expect her to complete three weeks' worth of work during that time period[69]. These circumstances are not only related to the medical condition behind her FMLA leave, but also directly linked to Wal-Mart's alleged reason for her termination. Even if Ms. Carr's job performance was poor, an allegation she vehemently denies, it is reasonable to infer from these circumstances that Ms. Carr's FMLA leave was also a motivating factor in her termination and that Wal-Mart exploited her medical condition in an effort to conceal the retaliation for FMLA leave.

## **CONCLUSION**

When drawing all reasonable inferences and considering the facts in the light most favorable to Ms. Carr, it is clear that a reasonable juror could find in favor of Ms. Carr. Ms. Carr shows a *prima facie* case of FMLA retaliation, that poor job performance is a pretext for her termination, and that retaliation for taking FMLA Leave was a motivating factor in the termination.

---

[64] Exhibit A pgs. 140-147.
[65] Exhibit A pgs. 42-50.
[66] Exhibit A pgs. 83-87.
[67] Exhibit A pgs. 137-140.
[68] *Id.*
[69] Exhibit A pg. 146.

More importantly, this case turns on Wal-Mart's true intent in Ms. Carr's termination and requires credibility determinations that are inappropriate in summary judgment motions. The sufficiency of such motives depends largely on the analytical framework utilized. Because this issue is unresolved and not applied uniformly, it presents a question of law that precludes summary judgment. Therefore, there are genuine issues of material fact and movant cannot prove it is entitled to judgment as a matter of law. Summary judgment should be denied.

Respectfully submitted,

_____
JUDI F. ABRUSLEY (#24272)
407 East 6th Avenue
Post Office Drawer 1114
Oakdale, Louisiana 71463
Telephone: (318) 335-3520
Fax: (318) 335-9780

## CERTIFICATE OF SERVICE

I certify that on May 14, 2019, a copy of this pleading was filed. Notice of this filing will be sent to all known counsel of record, and I also certify that I have this filing to STEPHEN P. BEISER, opposing counsel to 504-324-0965.

_____
JUDI F. ABRUSLEY