UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| SONYA CARR | CASE NO. 2:17-CV-01473 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| WAL-MART LOUISIANA, LLC | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 33] filed by defendant Wal-Mart Louisiana, LLC ("Wal-Mart") in response to the amended wrongful termination suit filed by plaintiff Sonya Carr. Carr opposes the motion, which is now ripe for review.

## I.
### BACKGROUND

This suit began with a *pro se* complaint filed in the 33rd Judicial District Court, Allen Parish, Louisiana, by Sonya Carr. *See* doc. 1, att. 3. There Carr alleged that she had worked at a Wal-Mart store in Oakdale, Louisiana, from February 2006 until she was terminated on October 4, 2016. *Id.* at ¶¶ 2–3. She also alleged that store manager Brent Dietz fired her out of personal animus, as demonstrated by a write-up he issued to her in July 2016 and based on his contention that she could no longer do her job after she took a few weeks of medical leave in September 2016. *Id.* at ¶¶ 3–6, 9. Accordingly, she filed suit against Wal-Mart on October 3, 2017, asserting that she was "terminated due to discrimination." *Id.* at ¶ 9.

Wal-Mart removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. It moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6), based on Carr's failure to demonstrate how her termination violated any state or federal law. Doc. 5. Counsel enrolled on Carr's behalf and opposed the motion. Docs. 18, 19. Counsel asserted that Carr's complaint provided adequate support for a claim of wrongful termination under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Doc. 18, p. 2. The court disagreed, finding the allegations were inadequate to support such a claim, but allowed Carr time to amend her complaint. Docs. 20, 21.

Carr filed an amended petition through counsel. Doc. 22. There she alleged that (1) her September 2016 leave was covered by FMLA; (2) she had been certified as eligible to return to work on September 26, 2016; and (3) she was nonetheless terminated for inability to perform her work on October 4, 2016. *Id.* Accordingly, she claimed that Wal-Mart terminated her in retaliation for exercising her right to leave under the FMLA. *Id.*

Wal-Mart now moves for summary judgment. Doc. 33. It asserts that Carr was fired for insubordination and poor job performance, and that she cannot provide any evidence of retaliatory motive. Doc. 33, att. 1. Carr opposes the motion and Wal-Mart has filed a reply. Docs. 38, 39.

## II.
## LAW & APPLICATION

### A. *Summary Judgment Standard*

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## B. Application

The FMLA provides employees with, *inter alia*, "reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). It also prohibits employers from interfering with or retaliating against employees for exercising their rights under the statute. *Id.* at § 2615(a). When presented with an FMLA retaliation claim, a court first asks if there is direct evidence of retaliation. *Garcia v. Penske Logistics, LLC*, 165 F.Supp.3d 542, 556 (S.D. Tex. 2014) (citing *Ray v. United Parcel Svc.*, 587 F. App'x 182 (5th Cir. 2014)). If there is not, the court uses the *McDonnell Douglas* burden-shifting framework to determine if there is adequate circumstantial evidence to support the claim.

Here Carr provides no direct evidence linking her termination to her medical leave. Under *McDonnell Douglas*, she must first make a *prima facie* showing of retaliation. *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). The burden then shifts to Wal-Mart to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* The burden at this step is one of production rather than persuasion; it "can involve no credibility assessment." *St. May's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If Wal-Mart makes this showing, Carr must "offer sufficient evidence to create a genuine issue of fact" that Wal-Mart's reason is a pretext for discrimination, or that it was "but one of the reasons for its conduct, [and that] another . . . was discrimination." *Richardson*, 434 F.3d at 333.

### 1. Carr's prima facie case

To set forth a *prima facie* case of retaliatory discharge, Carr must show that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3)

-4-

there was a causal connection between the protected activity and the discharge. *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401 (5th Cir. 2012) (citing *Richardson*, 434 F.3d at 332). The requirement of showing causation is not onerous at this stage; instead, the plaintiff need only show "that the protected activity and adverse employment action are not completely unrelated." *Garcia*, 165 F.Supp.3d at 558–59 (quoting *Mauder v. Metro. Trans. Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006)).

Wal-Mart challenges Carr's ability to satisfy the first and third elements. Under the first, Wal-Mart argues that Carr's reason for taking leave – work stress – does not entitle her to medical leave under the FMLA. Instead, the statute provides that an employee is covered for such leave if she has, in relevant part, "a serious health condition that makes [her] unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Associated regulations define a "serious health condition" as one involving either inpatient care or continuing treatment by a health care provider. *See* 29 C.F.R. § 825.113–15. Though Carr described her affliction in terms of work stress, she also testified that she had been to a doctor because she was not feeling well and discovered that her blood pressure was high. Doc. 34, att. 1, pp. 90–94. She provides a physician-completed "Certification of Health Care Provider for Employee's Serious Health Condition," describing her hypertension diagnosis and need for leave. Doc. 38, att. 6. Under the summary judgment standards set forth above, Carr's evidence relating to her requested leave satisfies the first prong.

Under the third prong, temporal proximity between the employee's invocation of an FMLA right and termination may be enough to show a causal connection when the two

events are "very close." *Amsel*, 464 F. App'x at 402 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). In establishing this rule, the Supreme Court referred approvingly to a Tenth Circuit decision holding that "a one and one-half month period between protected activity and adverse action may, by itself, establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (cited in *Breeden*, 532 U.S. at 273). While the Fifth Circuit has not established its own rule, it has narrowed the range in unpublished decisions and found fifteen days sufficiently close to support an inference of causation. *Stroud v. BMC Software, Inc.*, 2008 WL 2325639, at *5–*6 (5th Cir. Jun. 6, 2008) (citing *Ware v. CLECO Power LLC*, 90 F. App'x 705, 708 (5th Cir. 2004)).

In this matter, Carr's termination came less than two weeks after her return. *See Amsel*, 464 F. App'x at 401–02; *Podkovich v. Glazer's Distribs. of Iowa, Inc.*, 446 F.Supp.2d 982, 1006 (N.D. Iowa 2006) (both calculating temporal relationship from end of FMLA leave to termination). The time is short enough to establish a causal connection, especially in light of Carr's long tenure with the company and the fact that her last disciplinary action occurred two months before she went on leave. Carr has thus carried her burden of setting forth a *prima facie* case of retaliation.

### 2. *Wal-Mart's legitimate reason*

At the second step, Wal-Mart asserts that Carr was fired because of long-standing issues with Dietz as well as three previous store managers, which predated her medical leave. To this end it points to Carr's allegations in the original complaint that her issues with Dietz predated her medical leave. *See* doc. 1, att. 3, p. 3, ¶ 6. Carr also testified that she believed she had been treated unfairly by the three store managers who preceded Dietz.

Doc. 34, att. 1, pp. 17–30, 26–33. Finally, she received thirteen written "coachings" from managers over her ten years at Wal-Mart, relating to her job performance. *See* doc. 34, att. 3. Accordingly, Wal-Mart asserts that the record provides ample and legitimate grounds for Carr's termination.

Under Wal-Mart's progressive "coaching for improvement" policy, with which Carr was familiar, an employee receives a first, then second and third, written coaching from a manager or supervisor if her job performance does not meet expectations. Doc. 34, att. 2; doc. 34, att. 1, pp. 13–15. Coachings are effective for twelve months and any further write-ups while a prior coaching is in effect are issued at the next level – e.g., if an employee has received a second written coaching in the last twelve months, the next write-up will be a third written coaching. Doc. 34, att. 2. After the third written coaching, the employee is required to submit an action plan and may be subject to further disciplinary action, including termination, if she fails to do so. *Id.* at 1–2. If the employee requires further coaching within twelve months of receiving a third written coaching, she is subject to termination. *Id.* at 2.

Carr received a written coaching for insubordination on July 4, 2016, after a dispute with Dietz about the cleanliness of her department. Doc. 34, att. 3, p. 14. At the time she received this coaching, she already had an active third written coaching from September 29, 2015. *Id.* at 13. Carr acknowledged that she was subject to termination when she received the July 2016 coaching.[1] Doc. 34, att. 1, pp. 55–56. She admitted that she called

---

[1] As described below, however, she also disputes that she ever received the coaching from September 29, 2015.

district manager Clint LeBlanc to complain that the coaching was unjustified, and that he told her that she should have been fired and should start looking for another job. *Id.* at 62–65, 85–87. A human resources associate who was on the call agreed with LeBlanc. *Id.* at 85–87. LeBlanc also told Carr that he would fire her himself she continued causing trouble. *Id.* at 62–65.

On October 4, 2016, after returning from her leave, Carr was summoned to a meeting with Dietz and told that she had one week to clean up her department. *Id.* at 99. When she refused, claiming that she had just returned from leave and could not catch up so quickly, Dietz informed her that she was fired for inability to perform her job. *Id.* at 99–101. Her exit interview corroborates Carr's account and further notes that "[t]here [are] already 3 coachings in the system and this is the final step." Doc. 38, att. 7.

Because Wal-Mart's burden here is only one of production, it is met by this showing: legitimate reasons existed for Carr's dismissal under Wal-Mart's policies, as well as her history of write-ups and her poor relationships with managers. The court will consider Carr's claims of pretext and other motives, and her evidence relating to Wal-Mart's failures to adhere to its policies, under the final step below.

### 3. *Carr's claims regarding motive for termination*

Carr contends that Wal-Mart's reasons above are either pretext for retaliation or that retaliation was still a motivating factor alongside Wal-Mart's claims of insubordination and poor job performance.[2]

---

[2] Wal-Mart contends that the latter approach, termed a mixed-motives analysis, can only apply where Carr alleges that "discrimination was not the sole reason for her discharge, but only a motivating factor." Doc. 39, p. 2. As this court has noted, however, a plaintiff is not required to specifically allege that she is proceeding under a mixed-motive theory

A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (cleaned up). The plaintiff's burden is not met at this step if she relies only on uncorroborated allegations and self-serving statements, particularly when the defendant's motion is supported by "plentiful contrary evidence." *Smith v. Southwestern Bell Telephone Co.*, 456 F. App'x 489, 492 (5th Cir. 2012).

Carr testified that, despite her history of written coachings, she received "solid performer" on most of her evaluations and could not recall receiving a negative evaluation during her time there. Doc. 38, att. 2, pp. 3–4. On her final evaluation, issued five months before her termination, she received an overall rating of "Above Standard." Doc. 38, att. 4. She was promoted twice over her career with Wal-Mart, in 2007 and 2010. Doc. 38, att. 3. She testified that Dietz frequently complimented her work in the early months of 2016, when he first came on as manager, and told her that she had the potential for promotion.[3] Doc. 38, att. 2, pp. 28–29. She denies ever receiving the September 2015 third written coaching, which does not contain the electronic signatures present on most of the other coachings, and disputes the allegations made therein. Doc. 38, att. 2, pp. 23–24; *see* doc. 34, att. 3.

---

or to concede that retaliation was not the sole reason for her termination. *Allain v. Bd. of Supervisors of Univ. of La. Sys.*, 81 F.Supp.3d 502, 513 (W.D. La. 2015) (citing *Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010)). Carr is thus free to proceed under the mixed motive theory in her opposition. The court will only consider this theory, however, if Carr does not carry her burden with her pretext argument.

[3] She also testified that Dietz offered her a promotion to support manager, one level higher than her role of department manager, but that she turned him down because the promotion would change her hours and provided no increase in pay. Doc. 38, att. 2, pp. 28–29.

Carr asserts that, on the day she was fired, Dietz imposed conditions she could not meet when he ordered her to clean up her department within one week after being on leave for nearly three weeks. *See* doc. 38, p. 15. She testified that her department was in worse shape than when she left, that she could not fit three weeks' worth of work into one week, and that Dietz fired her immediately when she protested the assignment. Doc. 38, att. 2, pp. 31, 37–39. Finally, she notes that her request for unemployment benefits was approved, based upon the Louisiana Workforce Commission's determination that she had been terminated due to "inability to meet [her] employer's requirements" and that there was "no misconduct connected with the employment." Doc. 38, att. 5.

Carr's history at Wal-Mart was not unblemished, particularly over the last years leading up to her termination. Her decision to take medical leave does not protect her from disciplinary action based on any prior or subsequent infractions. The circumstances of her termination, however, suffice to preclude summary judgment and create an issue of fact as to whether Wal-Mart its past complaints about her performance as a pretext for dismissing her. There is some question as to whether Wal-Mart followed its own coaching policy before the termination, even though Carr admitted in her deposition that she would have been subject to termination based on the July 2016 coaching. Even if the third written coaching from September 2015 was valid, it is unclear why Wal-Mart did not dismiss Carr immediately after her subsequent coaching in July and why instead allowed another three months to pass. Additionally, though much of Wal-Mart's evidence relates to allegations of insubordination which predated her leave, it did not record this insubordination as a reason for her termination. Finally, Carr's contention that she was given a difficult task and

then fired promptly when she protested she could not do it, coupled with the proximity between that event and her return from medical leave, support her assertion that the reason provided was both pretextual and retaliatory. The court cannot decide the real reason for Carr's dismissal without weighing the evidence, which is the role of the jury. Accordingly, Carr has carried her burden on the final step and Wal-Mart is not entitled to summary judgment in this matter.

### III.
#### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 33] will be **DENIED**.

**THUS DONE** in Chambers on this 22 day of July, 2019.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**